IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED 97 APR 21 AM 10: 34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES OF AMERICA          )
                                  )
     Plaintiff                    )   CV 91-C-1785-S
                                  )
v.                                )
                                  )   ENTERED
ONE PARCEL OF REAL PROPERTY       )
LOCATED AT 1703 - 26TH AVENUE     )   APR 21 1997
SOUTH, BIRMINGHAM, ALABAMA,       )
ET AL.,                           )
                                  )
     Defendants                   )
_____)
REGINALD R. GREATHOUSE and        )
MARY GREATHOUSE,                  )
                                  )
     Claimants-Movants            )

## MEMORANDUM OPINION

The undersigned judge reacquired the above-entitled forfeiture case after it had been assigned to Judge Acker and treated at some length by Judge Acker on post-judgment issues. Judge Acker, with good reason, expressed doubts about the efficacy of the decree that forfeited to the United States the residence located at 1703 - 26th Avenue South, Birmingham, Alabama, then jointly owned by Reginald R. Greathouse and his spouse, Mary Greathouse. The forfeiture proceeding took place _after_ the owners had been indicted, prosecuted and convicted of participating in a cocaine drug conspiracy in CR 91-AR-260-S, a criminal case over which Judge Acker had earlier presided. Because of the connection between the

two cases, both captions were placed on the pleadings and orders while Judge Acker had post-judgment issues under consideration.

Not necessarily in their order of importance, the alternative bases for the Greathouses' attack on this forfeiture are (1) that it violated the Fifth Amendment's prohibition against a taking without "due process"; (2) that it violated the Fifth Amendment's prohibition against "double jeopardy"; and (3) that it violated the Eighth Amendment's prohibition against the imposition of "excessive fines."

### General Considerations

The jurisprudence in the area of forfeiture has evolved considerably since this court last had contact with this case. It has moved in a contradictory and somewhat confusing set of directions, making it difficult, if not impossible, to predict what a current majority of the Supreme Court would think of the instant fact and procedural situation in which the criminal convictions and subsequent substantial custodial sentences preceded the so-called civil forfeiture proceeding aimed at a modest bungalow owned and used by Mr. and Mrs. Greathouse to facilitate drug transactions but without any pre-seizure notice being given to Mr. and Mrs. Greathouse and without a pre-seizure hearing, and in which, after the vesting of title in the United States, the house was sold by a deed of conveyance executed by the U. S. Marshal to third parties for what appears to be an adequate consideration.

There has been a great deal of criticism of the federal civil forfeiture scheme here under challenge. Not only has there been general editorial criticism, but many courts have criticized it and many law professors have criticized it. This court also criticizes it, but the court has as its function the ascertainment and application of the law as it currently is and not as this court would like it to be. This court can hardly reconcile the expressions by the Supreme Court in *Austin v. United States*, 509 U.S. 1104, 113 S. Ct. 2801(1993), and *Dept. of Revenue of Montana v. Kurth Ranch*, ___ U.S. ___, 114 S. Ct. 1937 (1994), with the changed attitude reflected in *United States v. Ursery*, ___ U.S. ___, 116 S. Ct. 2135 (1996). As Justice Stevens put it in his dissent in *Ursery*:

> A reason *Austin* gave for treating § 1881(a)(7) as punitive -- the Court rejects or ignores. Every reason the court provides for treating § 1881(a)(7) as remedial - *Austin* rebuffed.

116 S. Ct. at 2158. It is difficult for this court to believe that so-called civil forfeiture does not, in fact, constitute a criminal sanction or at least a quasi-criminal sanction of the kind to trigger double jeopardy considerations. Yet, the Eleventh Circuit, with some reluctance, followed along in *U. S. v. Two Parcels of Real Property Located in Russell County, Alabama*, 92 F.3d 1123 (11th Cir. 1996), by saying:

> The claimants argue that because of a recent trend in forfeiture cases, we should hold that the so-called civil forfeiture is no longer civil and that the criminal rules should apply. *See*

3

> *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993) (Excessive Fines Clause limits scope of civil forfeiture judgments); *United States v. 2751 Peyton Woods Trail, S.W.*, 66 F.3d 1164 (11th Cir. 1995) (notice and hearing in accordance with Due Process Clause required prior to seizure). <u>This argument is foreclosed by the Supreme Court's recent pronouncement in *United States v. Ursery*, ___ U.S. ___, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), that civil *in rem* forfeitures do not constitute "punishment" for double jeopardy purposes</u>.

92 F.3d at 1129 (emphasis added). The Eleventh Circuit nailed the lid on the character of forfeiture, if the nail was not already in place, in *U. S. v. One Beechcraft King Air 300 Aircraft*, 107 F.3d 829, 830 (11th Cir. 1997), when it said:

> *Ursery* made it clear that the Supreme Court continues to view *in rem* forfeitures proceedings as civil actions rather than criminal punishment.

### Double Jeopardy

Despite *Usury*, this court can see a logical basis for distinguishing a case in which double jeopardy is applied to preclude a <u>criminal</u> indictment based on a <u>prior civil</u> forfeiture proceeding and a case like the instant one in which Mr. and Mrs. Greathouse are attempting to use their <u>criminal</u> indictments and convictions to avoid a <u>subsequent civil</u> forfeiture. The most obvious difference is that the criminal prosecution in CR 91-AR-260-S could have included an aspect seeking forfeiture of this very same residence. *See, e.g.*, "Need for Increased Emphasis on Criminal Forfeiture," a memorandum from George J. Terwillinger, Principal Deputy Attorney General to U. S. Attorneys, April 22, 1991.

Here, the United States deliberately waited until <u>after</u> it had obtained a criminal conviction and until <u>after</u> the sentence had been imposed by Judge Acker based on a pre-sentence report that ostensibly contained the value of this very house as among the Greathouses' assets. What Judge Acker would have done if he had known that the house was later going to be taken away from the defendant would call for speculation on the part of the undersigned and probably would have involved speculation by Judge Acker. There is certainly more of a practical reason to preclude forfeiture as a second sanction <u>subsequent</u> to the imposition of a criminal sanction than vice versa, but this court is not willing to be the first to say that the sequence in which the two proceedings are undertaken is crucial to a double jeopardy analysis. If Mr. and Mrs. Greathouse want to test this possible distinction, they will have to prevail on the issue in a court higher than this one. If they do prevail, it will be a reversal of this court about which this court will not get its feelings hurt.

### **Excessive Fines**

The excessive fines analysis can be very difficult in some cases, but not in this one. The question of whether or not a fine is excessive always involves "proportionality," considering the totality of circumstances. Proportionality is related primarily to the seriousness of the crime and not to the ability of a defendant to pay. In this case, the crime was serious, and the value of the

house is such that if one-half of its value had been assessed as a fine against each of the two criminal defendants who owned one-half undivided interest, the fine would easily have been within the guideline range for each defendant. Two cases which thoroughly explore this problem are *United States v. Certain Real Property located at 11869*, 70 F.3d 920 (6th Cir. 1995), and *United States v. One Parcel of Property*, 106 F.3d 336 (10th Cir. 1997). Applying their rationale to this case cannot lead to a finding of excessiveness.

### Due Process

When this court permitted the seizure of the Greathouses' house without a pre-seizure hearing, it did it before the lesson of *U. S. v. James Daniel Good Real Property*, __ U.S. __, 114 S. Ct. 492 (1993). As it turned out, the absence of a pre-seizure hearing would constitute a procedural defect serious enough to avoid this particular forfeiture but for two countervailing facts. First, there is no point in setting aside a forfeiture on the basis of a procedural fault when a defendant has no basis for the return of the property, particularly if the procedural defect has been remedied in subsequent proceedings. See *U. S. v. Deninno*, 103 F.3d 82 (10th Cir. 1996). To like effect is *U. S. v. Marsh*, 105 F.3d 927 (4th Cir. 1997), wherein the Fourth Circuit found that a remedy for a due process violation resulting from the Government's seizure of a claimant's property without pre-seizure notice and hearing was

6

for the Government to account for all rents derived from the seized property during the period beginning with the seizure until the date of an adversarial hearing, at which point the claimant would have received all the process to which she was due. This finding of no harm from the violation of *James Daniel Good* assumes, of course, that the court is correct in its above holdings with respect to double jeopardy and excessive fines.

Second, and perhaps more important, in this case there are innocent purchasers who paid a valuable consideration that this court finds reasonable, i.e., representative of fair market value of the house. The brief filed by the purchasers, Robert Walker and Theresa Walker, is persuasive. It is also supplemented by the brief of the United States.

### Conclusion

A separate, appropriate order will be entered.

DONE this \_\_21st\_\_ day of April, 1997.

*/s/ U. W. Clemon*
_____
U. W. CLEMON
UNITED STATES DISTRICT JUDGE